UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| MARK DANIEL JARRETT, | )<br>) |
| Plaintiff, | )<br>)  2:17-CV-00025-TRM |
| vs. | )<br>)<br>) |
| SOCIAL SECURITY ADMINISTRATION,<br>COMMISSIONER OF, | )<br>)<br>) |
| Defendant | ) |

**REPORT AND RECOMMENDATION**

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income were denied administratively by Defendant Commissioner following a hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of that final decision of the Commissioner. The plaintiff has filed a *pro se* Complaint [Doc. 2], asking the Court to award him benefits, and Defendant Commissioner has filed a Motion for Summary Judgment [Doc. 10]. Plaintiff has not filed any other pleadings besides his complaint.

**I.    Standard of Review**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact

1

for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

## II. Sequential Evaluation Process

The applicable administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?
>
> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

2

Case 2:17-cv-00025-TRM-MCLC Document 13 Filed 02/14/18 Page 2 of 16 PageID #: 3140

The burden shifts to the Commissioner with respect to the fifth step if the claimant satisfies the first four steps of the process. See *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

### III. Background and Procedural History

Plaintiff was born in 1969 and was a younger person under the applicable regulations at the time he filed his application (Tr. 268). Plaintiff's prior relevant work experience includes cleaner (medium, unskilled, DOT 381.687-018), car salesman (light, skilled, 273.353-010), and casino dealer (light, skilled, 343.464-010) (Tr. 73, 275, 342). He alleges that he became disabled on February 1, 2009, due to limitations from multiple herniated discs causing back pain, a dislocated rotator cuff, sciatica in both legs, nerve pain, fibromyalgia, traumatic head injuries, PTSD, poor reflexes, depression, anxiety, and social disorder (Tr. 226, 273). His insured status expired on June 30, 2014 (Tr. 30-31). Accordingly, he must establish disability on or before that date in order to be entitled to benefits. 20 C.F.R. § 4040.130.

In April 2016, an ALJ conducted an evidentiary hearing in which Plaintiff and a vocational expert ("VE") testified (Tr. 59-79). The ALJ found Plaintiff was not disabled under the Act (Tr. 126-38). The Appeals Council remanded the decision for further development of issues (Tr. 145-48). In September 2016, the ALJ again heard from Plaintiff and a VE (Tr. 39-58). Again, the ALJ found Plaintiff not disabled and denied benefits (Tr. 18-31). Plaintiff now appeals to this Court.

### IV. Evidence in the Record

Federal courts are not in the business of making arguments for parties, even where a litigant proceeds *pro se*. See *Kim v. Obama*, 615 F.App'x 516, 517 (10th Cir. 2015) ("[W]e won't act as [a *pro se* plaintiff's] advocate by formulating arguments or scouring the record on his behalf."). That notwithstanding, as Plaintiff has not filed any motions in this case, the Court will review the evidence in the record to determine whether substantial evidence exists to support the decision of the Commissioner.

3

**A.     Plaintiff's Physical Impairments**

In 1991, Plaintiff injured his back while lifting weights while employed by the United States Navy (Tr. 397-98). While he continued to experience ongoing back pain from that injury, in August 2008, a physical examination indicated Plaintiff's strength and sensation were normal (Tr. 362-63). An MRI showed moderate degenerative disc disease with a small central disc protrusion at the L5-S1 level (Tr. 401-02). A diffuse disc bulge with a tiny broad-based protrusion was noted at L4-L5 level with bilateral facet arthropathy noted at the last two levels (Tr. 402). Plaintiff received multiple epidural blocks in 2009 and 2010 and was prescribed a TENS unit (Tr. 366-77, 468-69, 533-35, 645-46). He was treated with physical therapy, opioids, over-the-counter pain medication, therapeutic exercises, and electric stimulation therapy (Tr. 382-84, 390-91, 621-22, 821-23, 830-31, 935-36).

In January 2009, Plaintiff told the VAMC doctor he had been taking more pain medication than prescribed and had also obtained a prescription for Lortab from an outside physician (Tr. 688). In February 2009, he stopped working and alleged this as his onset date for disability (Tr. 27). In March 2009, although the doctors at the Topeka, Kansas VAMC noted Plaintiff's chronic pain since 1991 injury, they also noted his history of narcotic seeking behavior and diagnosed him with opioid dependence (Tr. 398). In fact, in January 2010, the VAMC stopped prescribing Plaintiff narcotic medication given that he was not following the prescribed course of treatment. (Tr. 608-09, 1195-96).

In April 2010, Plaintiff was injured when he fell from his bicycle (Tr. 605-06). A CT scan revealed fractures to his right cheek bone and eye socket, and he was treated for facial injuries (Tr. 605-06, 749). An ophthalmological examination revealed no entrapment or evidence of corneal injury (Tr. 749). While he separated his right shoulder in the accident, (Tr. 416, 750), by July 2010, he stated he was getting better and only needed Ibuprofen to manage the pain (Tr. 411). At that time, he had a functional active range of motion, was ambulatory, and was in no acute distress

4

(Tr. 412).

Because Plaintiff reported a worsening of his pain symptoms following his bike accident, an MRI was performed in September 2010 which revealed multilevel degenerative disc disease (Tr. 467-68). In October 2010, Plaintiff went to the VA, complaining of right shoulder pain (Tr. 1109-10). His neurologic examination was normal, and he could place both hands behind his head without pain, sensation was intact, and he had a strong and equal grip (Tr. 1111).

In June 2011, the State agency medical consultant, Gordon Hale, M.D., opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about six hours, sit for about six hours, with an unlimited ability to push and pull (Tr. 81, 1230). He noted Plaintiff could occasionally balance, stoop, kneel, crouch, crawl and climb (Tr. 82, 1230). He placed no limitations on Plaintiff's manipulative, visual or communicative functioning (Tr. 83-84, 1230). Dr. Hale noted Plaintiff should avoid concentrated exposure to vibration (Tr. 84, 1230).

In September and December 2015, the State agency medical consultants opined that as of his date last insured, Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about six hours, and sit for about six hours, with an unlimited ability to push and pull (Tr. 102, 117-18). He could never climb ladders, ropes or scaffolds, but could occasionally balance, stoop, kneel, crouch crawl and climb ramps or stairs (Tr. 102, 118). He otherwise had no manipulative, visual or communicative limitations (Tr. 102, 118). He was to avoid concentrated exposure to vibration (Tr. 103, 118-19).

**B.      Plaintiff's Mental Impairments**

In September 2008, Plaintiff sought treatment from Veterans Affairs Medical Center ("VAMC") for depression and anxiety (Tr. 808-09). The VAMC assigned a global assessment of functioning (GAF) score of 60 (indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning) (Tr. 809).

In November 2010, Dr. Eric Petrie, a physician at the VAMC, diagnosed Plaintiff with

5

Case 2:17-cv-00025-TRM-MCLC   Document 13   Filed 02/14/18   Page 5 of 16
PageID #: 3143

anxiety disorder (not otherwise specified, rule out PTSD, rule out cannabis-induced anxiety disorder) cannabis and nicotine dependence (Tr. 1199). He assessed a GAF score of 60 and prescribed medication for his mental health symptoms (Tr. 1199).

In December 2010, Plaintiff underwent a consultative psychological examination (Tr. 1114-17). Jay Toews, Ed.D. observed that Plaintiff was not in distress, was cognitively intact, and appeared to function in the average range of intelligence (Tr. 1117). Dr. Toews assessed a GAF score of 60-65 and opined Plaintiff was able to remember detailed and complex instructions and appeared capable of performing in a wide range of occupations (Tr. 1117). He found that Plaintiff could interact and relate with coworkers and would have no problem managing his funds if he qualified for benefits (Tr. 1117).

In February 2011, Thomas Logan, M.A., LMHC, examined Plaintiff for post-traumatic stress disorder. He noted Plaintiff struggled with a variety of anxiety symptoms that caused a significant impairment in his daily living (Tr. 1123, 1303). Mr. Logan intended to treat Plaintiff, noting that he believed treatment could result in significant improvement within ten sessions. *(Id.)*. Plaintiff never returned for treatment.

In June 2011, State agency psychological consultant, Thomas Clifford, Ph.D., affirmed the conclusions of Dr. Sharon Underwood's evaluation, which found Plaintiff's mental impairments did not result in any restrictions of activities of daily living; posed moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence and pace; and that Plaintiff experienced no episodes of decompensation of any extended duration (Tr. 1139, 1229). Drs. Clifford and Underwood noted that Plaintiff may be distracted by coworkers on occasion and would perform better working alone or with familiar coworkers (Tr. 1127, 1229). They opined he should have limited contact with the general public and would perform better with positive, goal-oriented supervision (Tr. 1127, 1229).

## V. Administrative hearing

At his first administrative hearing in April 2016, Plaintiff testified that he had not worked since February 2009 as a result of fibromyalgia and degenerative disc disease (Tr. 62-63). Plaintiff described his physical limitations (fibromyalgia, having to stand, lay, sit, etc.) as preventing him from finding a suitable employer (Tr. 63). Concerning his functional limitations, Plaintiff testified he could walk for up to one mile but could only stand from 20 minutes to an hour (Tr. 63). Plaintiff reported feeling tired or fatigued every day (Tr. 65). Plaintiff stated he needed to lie down frequently. He also testified that he could lift up to 20 pounds (Tr. 66-67). Regarding his daily activities, Plaintiff testified that he enjoyed working in his garden, lived with his mother and helped her (Tr. 70).

At the second administrative hearing, in September 2016, Plaintiff testified that his pain had increased since the April 2016 hearing, but acknowledged that the pain had been there since his accident in 1992. (Tr. 43). Plaintiff described the pain as being like an "ice pick" (Tr. 42-43). Plaintiff said his pain level varied throughout the day (Tr. 44, 46). Plaintiff reported his medication left him feeling fatigued and somewhat drowsy (Tr. 47). In terms of social interaction, Plaintiff testified that he had no friends outside of his family and that people "irritate" him (Tr. 48). He also stated he could sit through and focus throughout the course of a feature-length film (Tr. 49).

Donna Bardsley, a vocational expert, also testified and described Plaintiff's past work as cleaner (medium, unskilled, DOT 381.687-018), car salesman (light, skilled, DOT 273.353-010), and casino dealer (light, skilled, DOT 343.464-010) (Tr. 55). The ALJ asked the VE to assume a hypothetical individual with Plaintiff's age, educational and prior work history, but restricted to the demands of light work that requires lifting of 20 pounds occasionally and 10 pounds frequently; could perform only simple routine jobs or job tasks that would not require frequent public contact or interaction; works better with things than with people (Tr. 55-56). The VE testified that there would be jobs in the national and regional economy such a person could perform. For example,

7

the VE identified that such an individual could perform work as an assembler (DOT 706.687-010, regionally 3,600 jobs available; nationally 345,000 jobs available), sorter (DOT 209.687-020; regionally 4,850 jobs available; nationally 592,000 jobs available), and checker or inspector (DOT 221.587-018; regionally 3,000 jobs available; nationally 260,000 jobs available). The VE noted that her testimony was consistent with the *Dictionary of Occupational Titles* (Tr. 56).

## VI. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through June 30, 2014, and had not engaged in substantial gainful activity since February 1, 2009, the alleged onset date of Plaintiff's disability. The ALJ found Plaintiff had severe impairments of chronic pain, especially in the lower back; anxiety; and depression (Tr. 20).

The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments found in 20 C.F.R. Part 404, Subpt. P, App'x 1 (20 C.F.R. § 404.1520(d), 416.920(d)). Regarding Plaintiff's chronic back pain, the ALJ concluded it did not satisfy the criteria for a listed impairment (Tr. 21). The ALJ noted that no State agency reviewer or treating physician concluded that Plaintiff had an impairment or combination thereof that was severe enough to meet or equal a listing (Tr. 21).

The ALJ similarly found Plaintiff's mental impairments did not meet a listing of impairments. First, the ALJ found that they did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation (Tr. 21). He noted that Plaintiff had only mild restrictions in activities of daily living, observing that Plaintiff had difficulty dressing himself, bathing, and putting on his own socks and shoes (Tr. 21). Plaintiff cared for his service dog (Tr. 21). In social functioning, the ALJ found only moderate limitations. The ALJ noted that Plaintiff, while he reported he had difficulty getting along with others because people "irritate" him, he maintained relationships with his mother, aunt, and children (Tr. 21). As recently as August

8

2008, Plaintiff lived with a significant other (Tr. 21). Pertaining to concentration, persistence, or pace, the ALJ found only moderate difficulties. This was based on Plaintiff testifying he was able to use a smartphone and watch movies (Tr. 21). Plaintiff recently passed a driver's license examination (Tr. 21). Plaintiff also testified that he could travel and in fact did travel across the country by car (Tr. 22).

The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 4040.1567(b) (Tr. 22). The ALJ found Plaintiff could perform only simple, routine jobs and tasks, not requiring frequent public interaction; Plaintiff would work better with things versus people (Tr. 22). In reaching this RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's pain or other symptoms, but that his statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible (Tr. 23). The ALJ noted the medical evidence, including the treatment record, did not support the degree of limitations alleged by Plaintiff (Tr. 23). The ALJ even noted that Plaintiff's symptoms improved with treatment (Tr. 23).

Regarding Plaintiff's back pain, the ALJ found the level of pain to be inconsistent with the objective medical evidence (Tr. 23). Specifically, while Plaintiff complained of debilitating pain, as of August 2008, Plaintiff had normal strength in the muscles of the bilateral major muscle groups in the lower extremities (Tr. 23). He experienced no swelling, no calf tenderness, and his peripheral pulses were normal.

The ALJ discussed Plaintiff's fibromyalgia as required pursuant to SSR 12-2p. The ALJ evaluated Plaintiff's statements regarding his symptoms and limitations. The ALJ also reviewed the medical evidence, including test results and treatment history. The ALJ noted that the VAMC had labeled Plaintiff as drug-seeking by March 2009 and provided specific examples of this behavior (Tr. 24). The ALJ even noted that Matthew John Caffrey, M.D., attempted to move Plaintiff to a non-opioid long-term therapeutic management because Dr. Caffrey opined that

9

Plaintiff's "pain was not as severe as he alleged" (Tr. 25). The ALJ also reviewed Plaintiff's testimony and concluded that the pain symptoms were not as severe as he alleged, again giving specific examples.

The ALJ also considered all of the medical evidence submitted. He noted that the medical records did not support Plaintiff's allegations of disability. In making that finding, the ALJ noted that Plaintiff engaged in a number of home activities, including building a cage with chicken wire and working in his garden (Tr. 25). The ALJ also found that Plaintiff's subjective complaints were not consistent with his daily activities. In April 2009, Plaintiff pursued a vocational rehabilitation program. In June 2009, he boated and maintained a relationship with a significant other. In July 2009, he claimed that his anxiety was under control. In September 2009, he pursued higher education. In August 2013, he traveled across the country from Wyoming to Florida.

The ALJ referred to the physical examinations as being essentially normal. Plaintiff had mild tenderness in the cervical/thoracic/lumbar spine areas but had a full range of motion. He had a normal gait and stance and could perform tandem walk and heel and toe walk without difficulty. He noted that while he had mild bulging discs, he was not diagnosed with herniated discs, spinal stenosis, neuroforaminal narrowing or nerve root impingement (Tr. 26). The only treatment recommended was conservative; no surgical intervention. The ALJ also noted that Plaintiff was never hospitalized for his back pain and the record is devoid of office visit notes reflecting trips to the doctor seeking relief from Plaintiff's symptoms, whether from fibromyalgia or from low back pain. When the VA accused him of abusing narcotics, Plaintiff decided he would not seek any more treatment from the VA. In any event, a treatment note of November 18, 2014, showed Plaintiff was doing well and that he planned to move out from his mother's house once he "got on his feet." (Tr. 27). Notwithstanding his complaint with the VA, he continued to receive treatment there and continued to do well (Tr. 27). Finally, the ALJ found Plaintiff's complaints to be undermined by his dishonesty regarding his history of drug and alcohol abuse. He claimed he had

never abused his medication, yet the treatment notes are quite clear that Plaintiff was not taking his medication as prescribed.

While the ALJ noted that the Plaintiff had severe mental impairments, he found that those limitations arising from those impairments would not preclude the performance of at least simple, repetitive, non-detailed work-related tasks and would only limit him to superficial contact with the general public. The ALJ found that these mental impairments would not limit him from engaging in unskilled work, which would include carrying out simple instructions, using judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting. The ALJ found that Plaintiff was not limited in any of the basic mental activities required for work. (Tr. 28).

This case was somewhat simplified because no treating physician offered an opinion in this case. Concerning the remaining medical opinion evidence, the ALJ gave great weight to the opinion of State agency psychologist Sharon Underwood, Ph.D., who opined that Plaintiff had no restriction in activities of daily living, moderate difficulty in maintaining social functioning, and mild difficulty in maintaining concentration, persistence and pace (Tr. 28). However, the ALJ assigned some weight to one aspect of the opinion of Dr. Underwood that Plaintiff would become distracted by coworkers on occasion and would perform better working alone, have limited contact with the general public, and perform work with positive, goal-oriented supervision (Tr. 28).

The ALJ also assigned some weight to the opinion of Jay Toews, Ed.D., who opined on January 19, 2011, that Plaintiff could remember detailed and complex instructions, as well as interact and relate with coworkers (Tr. 28). This opinion is consistent with the notes from the VAMC (Tr. 28).

Concerning his physical capabilities, the ALJ gave great weight to Dr. Hale and the State agency medical consultants who opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about six hours, sit for about six hours, with an

11

unlimited ability to push and pull (Tr. 81, 102, 117-18, 1230). After determining that based on all of the medical evidence, Plaintiff had a residual functional capacity to perform light work with the limitations noted, the ALJ determined, based on the testimony of the VE, that other jobs existed in the national economy that Plaintiff could perform. The VE identified occupations of assembler, sorter, and checker/inspector that someone of Plaintiff's limitations could perform. He found that the VE's testimony was consistent with that of the Dictionary of Occupational Titles. Accordingly, the ALJ found Plaintiff was not disabled.

## VII.     Analysis

Plaintiff filed this action *pro se.* In his complaint, Plaintiff simply states he was denied social security benefits by the ALJ and requests this Court to approve his claim [Doc. 2, pgs. 1-3]. The Court will now examine the record to determine whether substantial evidence supports the Commissioner's decision finding Plaintiff not disabled.

A claimant is entitled to receive disability benefits only when he establishes disability within the meaning of the Social Security Act. See 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905(a).  The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926), has no past relevant work and has not been under a disability, as defined in the Social Security Act, since the date the Application was filed.   In this case, the ALJ proceeded through the sequential steps to conclude that Plaintiff was not disabled.  The Court finds substantial evidence supports the ALJ's decision at each step.

After determining Plaintiff has not engaged in substantial gainful activity, the ALJ

12

proceeded to the second step and determined Plaintiff had severe impairments of chronic pain, especially low back, anxiety and depression. The ALJ properly analyzed the impact of all of Plaintiff's severe impairments, including that of fibromyalgia, on his ability to engage in work-related activities. See 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The fact that an impairment is severe does not mean Plaintiff is disabled. Rather, because the ALJ found severe impairments, he proceeded along the next step in the sequential process.

At step three, the ALJ properly analyzed Plaintiff's mental impairments under the "paragraph B" criteria and determined that Plaintiff had only mild restrictions of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence and pace; and no episodes of decompensation (Tr. 21). Substantial evidence supports the ALJ's treatment of Plaintiff's mental impairments at step three.

The ALJ then determined that Plaintiff had the residual functional capacity to perform light work as defined by 20 CFR 404.1567(b) but he was limited to performing only simple, routine jobs and tasks, not requiring frequent public interaction, and that he would work better with things than with people. These conclusions were supported by the record. Dr. Gordon Hale opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about six hours, sit for about six hours, with an unlimited ability to push and pull (Tr. 81, 1230). Dr. Hale noted Plaintiff could occasionally balance, stoop, kneel, crouch, crawl and climb (Tr. 82, 1230). Dr. Hale placed no limitations on Plaintiff's manipulative, visual or communicative functioning (Tr. 83-84, 1230). This conclusion was supported by the State agency medical consultants who also opined Plaintiff could perform light work. (Tr. 102, 117-18).

The Court finds substantial evidence supports the ALJ's decision. First, regarding the ALJ's treatment of Plaintiff's credibility, the Court finds the ALJ properly evaluated Plaintiff's credibility. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th

13

Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Id.* The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Soc. Sec. Ruling 16-3p; *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2016 WL 1119029, *9 (S.S.A. Mar. 16, 2016).

In making judgments about a claimant's credibility, the ALJ should consider a number of different factors including daily activities, intensity and frequency of the pain, medication that a claimant takes or is prescribed, other treatment, and any other measures used to relieve the pain and its symptoms. 20 C.F.R. § 416.929(c)(3). In this case, the Court has reviewed the ALJ's decision and finds he has complied with the requirements of the regulations in assessing a claimant's credibility as to his pain and its effect on his ability to engage in substantial gainful activity. The ALJ compared Plaintiff's subjective allegations against the objective medical evidence. He discussed how the evidence supported his conclusion and cited to specific evidence in the record.

The ALJ was also required to evaluate Plaintiff's fibromyalgia in light of SSR 12-2p. SSR 12-2p describes how an ALJ should "evaluate [fibromyalgia] in disability claims." *Titles II & XVI: Evaluation of Fibromyalgia*, SSR 12-2P, 2012 WL 3104869, at *1 (S.S.A. July 25, 2012). When it comes to determining a claimant's RFC, the Ruling states that the ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id*. at *6. The ruling also requires an ALJ to consider a claimant's pain or other fibromyalgia symptoms in determining nonexertional or mental limitations as well as postural or environmental limitations. *Id*. It also sets forth the manner to evaluate a person's statements about his or her symptoms and functional limitations (i.e.

14

credibility). *Id*. As noted, the ALJ did precisely just that. He noted that he found Plaintiff's allegations not entirely consistent with the record. He noted Plaintiff was not honest about his history of drug abuse. He evaluated the objective medical evidence in comparison to Plaintiff's subjective complaints and how that was inconsistent with Plaintiff's daily activities.

The ALJ also properly weighed the expert opinions in arriving at Plaintiff's RFC. 20 C.F.R. § 404.1527(b), (c). In this case, the record contained opinions from examining and non-examining sources, all acceptable medical sources under the regulations. Unlike in many cases, there was no treating source opinion on Plaintiff's limitations. The ALJ considered the findings of these sources, as required by the regulations. *Id.* The ALJ properly weighed the opinions and his decision reflects that he considered their opinions under the relevant regulatory factors. He gave detailed reasons why he rejected some medical opinions and accepted others. In determining Plaintiff's RFC, he relied on the objective medical evidence and the opinions of acceptable medical sources in concluding that Plaintiff could perform light work. Substantial evidence supported his finding in this regard and in regards to the non-exertional limitations he imposed.

If the impairments do not meet a listing at step three, then the ALJ must proceed to step four and determine whether the claimant can return to his past relevant work given his residual functional capacity (RFC). 20 CFR §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). In this case, given the RFC the ALJ determined Plaintiff retained, the ALJ properly found Plaintiff could not return to his past relevant work.

Continuing on to step five, the burden is on the Commissioner to show that the claimant remains capable of performing alternative work in the national economy given his residual functional capacity, age, education, and past relevant work experience. See 20 CFR §§404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). In this case the ALJ utilized the expert services of a vocational expert, Dr. Donna Bardsley, who identified other jobs in sufficient numbers which were within Plaintiff's RFC (Tr. 55-57). The Court finds the hypothetical posed

to the VE was supported by substantial evidence. The ALJ had a basis in the medical evidence to conclude that Plaintiff retained the ability to engage in light work, could only perform simple, routine jobs and tasks, not have frequent public interaction, and would work better with things than people (Tr. 22). Based on that hypothetical, the VE identified jobs a claimant could perform other work, including the representative occupations of assemblers, sorters, and checkers/inspectors (Tr. 56). The VE testimony, in response to a properly formulated hypothetical question, constitutes substantial evidence supporting the Commissioner's decision to find Plaintiff not disabled. *See* 20 C.F.R. § 404.1566(e). Because there are jobs Plaintiff can perform and because they exist in sufficient numbers in the economy, the ALJ concluded that Plaintiff was not disabled. Substantial evidence supports that conclusion.

## VIII. Conclusion

The Court RECOMMENDS that the Commissioner's motion for summary judgment [Doc. 10] be GRANTED and that the case be DISMISSED.[1]

Respectfully Submitted,

/s Clifton L. Corker
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See *Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).